RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com

JUSTIN A. BRACKETT (HI Bar No. 9954)
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: justinbrackettlaw@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASHLEY PATINIO,<br><br>            Plaintiff,<br><br>   vs.<br><br>ENCORE CAPITAL GROUP, INC.,<br>MIDLAND FUNDING, LLC,<br>MIDLAND CREDIT<br>MANAGEMENT,INC.,<br><br>and<br><br>LAW OFFICES OF MARVIN S.C.<br>DANG, LLLC<br><br>            Defendants. | CASE NO._1:14-cv-00454_____<br><br><br>COMPLAINT FOR DAMAGES<br>DECLARATORY AND INJUNCTIVE<br>RELIEF, EXHIBITS ONE THROUGH<br>THREE, AND VERIFICATION<br><br>JURY TRIAL REQUESTED |

---

## COMPLAINT

---

### JURISDICTION AND VENUE

1.     This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), in their illegal efforts to collect a consumer debt.

2.     This is also an action for damages against the Defendants for unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Sections 443B-18, 19, and 20 of the Hawaii Revised Statutes.

3.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d) ) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.     Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

### PARTIES

5.     Plaintiff Ashley Patinio, formerly known as Ashley Peters, (hereinafter "Plaintiff" or "Mrs. Patinio") is a natural person who resides in Honolulu County, Hawai'i, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "debtor" as that term is defined by Haw. Rev. Stat. § 443B-1.

6.      Defendant Encore Capital Group, Inc. (hereinafter "Defendant Encore") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Delaware, and maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process.

7.      Defendant Midland Funding, LLC (hereinafter "Defendant Midland Funding") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Defendant Encore, and that maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process.

8.      Defendant Midland Credit Management, Inc. (hereinafter "Defendant Midland" or "Midland") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Kansas that is a wholly owned subsidiary of Defendant Encore, and maintains Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614, as its registered agent for service of process.

9.      Defendant Law Offices of Marvin S. C. Dang, LLLC (hereinafter "Defendant Dang" or "Dang") is a "debt collector" as that term is defined by 15 U.S.C. §

2

1692a(6), a for-profit corporation organized in Hawaii, and that maintains Marvin Dang, 239 Merchant St., Suite 100, Honolulu, HI 96813, as its registered agent for service of process.

10.     Other defendants may be discovered in the course of litigation, and Mrs. Patinio respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTUAL ALLEGATIONS

11.     Defendants use mail in their businesses.

12.     Defendants use telephone communications in their businesses.

13.     The primary purpose of Defendants' businesses is the collection of debts.

14.     Defendants regularly collect or attempt to collect debts owed, or due, or asserted to be owed or due to another.

15.     Defendants are debt collectors subject to the provisions of the Fair Debt Collection Practices Act and the Hawai'i Revised Statutes.

16.     Defendants have alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C.

3

§ 1692a(5) and Haw. Rev. Stat. § 443B-1, more specifically, a credit card bill allegedly originally owed to or serviced by HSBC with an account ending in 3112.

17.    On or some time prior to December 18, 2010, Plaintiff's debt was assigned or transferred to Defendant Midland Funding for collection with Defendant Midland Credit Management as "servicer."

18.    On December 18, 2010, Defendant Midland Credit Management sent Ms. Patinio a letter pertaining to the HSBC account ending in 3112.  There, Defendant demanded $956.68.  A true and exact copy of the December 18, 2010 letter is attached as **Exhibit One**.

19.    A "Statement" was attached to that letter stating that the previous balance was $931.72.  **Exhibit One**. However, Defendants had applied an interest rate of 6% and raised the balance due to $956.68.  **Exhibit One**.

20.    On March 10, 2014, Defendant Dang sent a letter to Ms. Patinio's uncle's address pertaining to the account ending in 3112.  The letter states that Defendant Dang had "previously sent [Ms. Patinio] a debt validation letter."  A true and exact copy of the letter is attached as **Exhibit Two**.

21.    Upon information and belief, Defendants knew that Ms. Patinio's address was not the Date Street address to which the March 10, 2014 letter was sent.  *See*

**Exhibit Two**.  Indeed, an agent of Defendants had encountered Ms. Patinio at Ms. Patinio's correct address before March 10, 2014.

22.     The March 10, 2014 letter was the first correspondence Ms. Patinio had ever received from Defendant Dang.

23.     On September 16, 2014, Defendant Dang sent Attorney Justin Brackett a letter in an effort to collect the debt allegedly owed by Ms. Patinio.  The letter pertains to the account ending in 3112 and identifies:  a) Ashley Peters as Mr. Brackett's client; and b) Midland Funding as Defendant Dang's client.  The letter states that the "[a]mount due as of 9/16/2014 [was] $931.72."  A true and exact copy of the September 16, 2014 letter is attached as **Exhibit Three**.

24.     As of September 16, 2014 Attorney Brackett did not represent Ms. Patinio in regards to the account ending in 3112.    Ms. Patinio had not consented to Defendants' communications with Mr. Brackett pertaining to the account ending in 3112.

25.     The letter did not request location information pertaining to Ms. Patinio. Instead, the letter purports to be a "Debt Validation Notice" and demands that Mr. Brackett's purported "Client send a money order or check made payable to 'Marvin Dang-Client Trust Account'" to Defendant Dang's address.    **Exhibit Three**.

26.    Ms. Patinio has made no payments on the account ending in 3112 since well before December 18, 2010.

27.    Upon information and belief, Defendants do not maintain (i.e., actually employ or implement) procedures to avoid errors under the FDCPA.

28.    Upon information and belief, Defendants do not maintain (i.e., actually employ or implement) procedures to avoid errors under the Hawai'i Revised Statutes.

29.    Ms. Patinio has suffered actual damages as a result of Defendants' conduct, including but not limited to costs and losses associated with meetings with her attorneys.

## CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF
### THE FAIR DEBT COLLECTION PRACTICES ACT

30.    The acts of Defendants constitute multiple violations of the FDCPA. Violations by Defendant of the FDCPA include, but are not limited to, the following.

31.    The FDCPA forbids communicating with any person other than the consumer for any purpose other than the acquisition of location information about the consumer.  15 U.S.C. §§ 1692b(1), 1692b(2).

6

32.     Defendants communicated with a third party, Attorney Brackett, by sending Mr. Brackett the September 16, 2014 letter which purports to be a "Debt Validation Notice," **Exhibit Three**, when Mr. Brackett did not represent Ms. Patinio in regards to the account ending in 3112.

33.     Defendants communicated with a third party, Ms. Patinio's uncle, by sending her uncle the March 10, 2014 collection letter.  **Exhibit Two**.

34.     Defendants never attempted to confirm or correct Ms. Patinio's location information in either the March 10, 2014 letter or the September 16, 2014 letter. **Exhibits Two** and **Three**.   Instead, Defendants demanded that Mr. Brackett instruct Ms. Patinio to send a money order or check to Defendant Dang.  **Exhibit Three**.

35.     Upon information and belief, Defendants knew that Ms. Patinio's uncle's Date Street address was not Ms. Patinio's address.  *See* **Exhibit Two**.  In fact, an agent of Defendants had personally encountered Ms. Patinio at Ms. Patinio's correct address before March 10, 2014.   This third party communication was knowing, willful, and/or intentional.

36.     Without the prior consent of the consumer given directly to Defendant, it may not communicate with any other person in connection with the collection of the debt, except Ms. Patinio, her attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector,

other than for the purpose of acquiring "location information."  None of those limited exceptions are present here.

37.    This unauthorized third party communication, which falsely represents that Mr. Brackett is Patinio's attorney in regards to the account ending in 3112 and that the letter is a "Debt Validation Notice," also constitute false and misleading representations in violation of 15 U.S.C. § 1692e. *See* **Exhibit Three**.

38.    Defendant Dang also failed to send the consumer a thirty-day validation notice within five days of the initial communication, which is a violation of 15 U.S.C. §§ 1692g, 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5) and 1692g(b).

39.    The first communication sent to Ms. Patinio by Defendant Dang was on March 10, 2014.  The letter does not include the requisite notices.  **Exhibit Two**.  Ms. Patinio has never received any of the requisite notices pursuant to 15 U.S.C. §§ 1692g, 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), 1692g(a)(4), or 1692g(a)(5) from Defendant Dang.

40.    Defendant Dang has never provided any validation of the debt or informed Ms. Patinio of her rights to dispute the debt.

41.    The procedures maintained (i.e., actually employed or implemented) by Defendants, if any, to avoid errors under the FDCPA, failed to protect the rights of

Ms. Patinio when the representatives of Defendant failed to provide numerous required disclosures pursuant to 15 U.S.C. §§ 1692d(6), 1692e(11), 1692g, 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5).

42.    Defendants also attempted to collect of an amount (including any interest, fee, charge, or expense incidental to the principal obligation) that was not expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

43.    The amounts sought by Defendants in their various communications include rates of interest and various fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were in direct violation of 15 U.S.C. § 1692f(1).

44.    The December 18, 2010 letter from Defendant Midland Credit on behalf of Defendant Midland Funding demands $956.68, an amount calculated by Midland by purportedly applying a 6% interest rate and adding $24.96 to the balance. **Exhibit One**.

45.    Yet, after Defendant Dang was retained and despite the absence of any payment, Defendants demanded $931.72.  **Exhibit Three**.  After calculating the time that had passed between the December 18, 2010 letter and the September 16, 2014 letter, Defendants applied an interest rate of -.727%.

46.     This interest rate was applied despite Midland having represented that it was applying a 6% interest rate, a representation that remained uncorrected until at least such time as it retained Defendant Dang to pursue Ms. Patinio in regards to the account ending in 3112.

47.     Neither the rates of 6%, nor -.727%, are interest rates and/or fees afforded by the contract or permitted by law.  Ms. Patinio asserts that Defendants are demanding amounts that are not authorized by the agreement creating the debt. Ms. Patinio asserts that her contractual interest rate was never 6% or -.727%.

48.     The demands by Defendants are in direct violation of 15 U.S.C. § 1692f(1).

49.     Demanding these odd amounts are false, deceptive, or misleading representations or means in connection with the collection of the debt, which are also violations of 15 U.S.C. § 1692e.

50.     Demanding these odd amounts are also false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. § 1692e(2).  The actual amount that is owed is certainly in question and the odd amounts are false and deceptive.

51.     By assigning different interest rates and demanding odd amounts, Defendants have confused Ms. Patinio as to the amount owed.

52.     Ms. Patinio alleges that Defendants never reviewed her original contract

10

with HSBC and had no authority to demand the amounts they have demanded.

53.    Moreover, the letters from the Midland Defendants assign an account number of 853577600. See **Exhibit One**.  Ms. Patinio asserts this was never the account number for her HSBC account and she is confused as to which account the Midland Defendants are collecting.   Ms. Patinio is further confused as Defendant Dang's letter refers only to the HSBC account number ending in 3112, yet purports to identify Defendant Midland Funding's account number.  **Exhibit One**.

### *COUNT TWO: VIOLATIONS OF THE HAWAII REVISED STATUTES*

54.    Defendants attempted to collect of an amount (including any interest, fee, charge, or expense incidental to the principal obligation) that was not expressly authorized by the agreement creating the debt or permitted by law, which is a false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding in violation of Haw. Rev. Stat. § 443B-15.

55.    The amount of the underlying debt is disputed.

56.    The December 18, 2010 letter from Defendant Midland Credit and sent on behalf of Defendant Midland Funding demands $956.68, an amount calculated by Midland by purportedly applying a 6% interest rate and adding $24.96 to the

11

balance.  **Exhibit One**.

57.    Yet, after Defendant Dang was retained and despite the absence of any payment, Defendants demanded $931.72.  **Exhibit Three**.  After calculating the time that had passed between the December 18, 2010 letter and the September 16, 2014 letter, Defendants applied an interest rate of -.727%.

58.    This interest rate was applied despite Midland having represented that it was applying a 6% interest rate, a representation that remained uncorrected until at least such time as it retained Defendant Dang to pursue Ms. Patinio in regards to the account ending in 3112.

59.    Neither 6% nor -.727% are interest and/or fees permitted by law.  Ms. Patinio asserts that Defendants are demanding amounts that are not authorized by the agreement creating the debt.  Ms. Patinio asserts that her contractual interest rate was never 6% or -.727%.

60.    By assigning different account balances and an unknown but obviously varying rate of interest, Defendants have made a false representation or implication of the character, extent, or amount of money Ms. Patinio owes on this account.

61.    By demanding interest which was not accruing at the applicable contractual rate of interest, Defendants have made a false representation or implication of the character, extent, or amount of money Ms. Patinio owes.

62.    The letter from Defendant Dang sent on behalf of Defendant Midland Funding demands a very odd amount from Ms. Patinio, a decrease from Defendant Midland's previous demands.  Ms. Patinio is confused as to how Defendant Dang and/or Midland calculated said amount and what authority they have to demand an unfamiliar rate of interest.

63.    By attempting to collect unknown, unauthorized and/or illegal amounts through false and deceptive communications, Defendants deceived and/or misled Ms. Patinio as to what amount of money she owes on this account.

64.    Defendants have also violated Section 443B-19(4) of the Hawaii Revised Statutes.  As evidenced by the demand of odd amounts, Defendants attempted to collect interest or other charges, fees, or expenses incidental to the principal obligation.  Ms. Patinio asserts that the fees, charges, or expenses were not expressly authorized by law or the original contract, and are unfair and/or unconscionable, and that Defendants demands are in violation of Section 443B-19(2).

65.    Defendants have also or alternatively violated Section 443B-18(8) of the Hawaii Revised Statutes, which prohibits representations that the existing obligation may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges where the fees or charges may not legally

13

be added to the existing obligation.   Demanding these odd amounts demonstrates that Defendants did add fees or charges.   Ms. Patinio asserts that the fees or charges were not legally added to the existing obligation and not authorized by the original contract and are in violation of Section 443B-18(8).

66.   Defendants have also or alternatively violated Section 443B-19(3) of the Hawaii Revised Statutes, which prohibits the collection of or attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charges for services rendered.   Demanding these odd amounts demonstrates that Defendants did attempt to collect fees or charges.  Ms. Patinio asserts that the fees or charges were not legally added to the existing obligation and not authorized by the original contract and are in violation of Section 443B-19(3).

67.   Ms. Patinio has suffered actual damages as a result of Defendants' conduct, including, but not limited to, mailing costs, mileage costs, and costs and losses associated with meetings with her attorneys.

## COUNT THREE – INTRUSION UPON SECLUSION

68.   Ms. Patinio asserts that Defendants have invaded her privacy by committing an unreasonable intrusion upon her seclusion.   Defendant has also given public disclosure to her private facts.

69.   Information about a plaintiff need not be published to establish a claim for

14

invasion of privacy based on an unreasonable intrusion upon the plaintiff's seclusion. The Restatement (Second) of Torts § 652B (1977).

70.    Defendants' gross and careless conduct unlawfully invaded Ms. Patinio's personal privacy and caused Ms. Patinio to suffer mental anguish and actual damages.

71.    Defendants' conduct was intentional and/or reckless and Ms. Patinio is entitled to recover exemplary damages in an amount to be set by the trier of fact.

72.    Defendant's repeated attempts to collect money, in confusingly various amounts, by sending communications both to Ms. Patinio's uncle and to Attorney Brackett violated Ms. Patinio's right of privacy.

73.    Defendants' illegal abusive communications, as more fully described above, were the direct and proximate cause of severe emotional distress on the part of Ms. Patinio.

74.    Ms. Patinio has suffered actual damages as a result of these illegal communications by Defendants, including, but not limited to, mailing costs, mileage costs, and costs and losses associated with meetings with her attorneys.

75.    Ms. Patinio has also suffered anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, confusion, amongst other negative

emotions, as well as suffering from unjustified and abusive invasions of her personal privacy.

### *Summary*

76.    The above-detailed conduct by Defendants and their agents in connection with collection of the debt, was conduct in violation of numerous and multiple provisions of the FDCPA and Hawai'i Revised Statutes including, but not limited to the above-cited provisions.

### *Respondeat Superior Liability*

77.    In addition to their individual liability under the FDCPA, the acts and omissions of Defendant Dang, and any other debt collectors hired as agents by and for Defendant Encore, and who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Encore.

78.    The acts and omissions by Defendant Dang, and any other debt collectors hired as agents by and for Defendant Encore, were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant Encore in collecting consumer debts.

79.    By committing these acts and omissions against Plaintiff, Defendant Dang, and any other debt collectors hired as agents by and for Defendant Encore, were motivated to benefit their principal, Defendant Encore.

80.     Defendant Encore is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal and state law by the debt collectors employed as agents by Defendant Encore, including, but not limited to violations of the FDCPA, the Hawai'i Revised Statutes, and any other federal or state consumer protection statutes, in their illegal attempts to collect the debt from Plaintiff.

### TRIAL BY JURY

81.     Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against any or all Defendants and in favor of the Plaintiff as follows:

a)     Declaratory judgment that any or all Defendants violated Ms. Patinio's rights under the Fair Debt Collection Practices Act;

b)     Declaratory judgment that any or all Defendants violated Ms. Patinio's rights under the Hawai'i Revised Statutes;

c)     A permanent injunction against Defendant Encore and all of its subsidiaries and agents requiring them to cease and desist from adding interest to any account they are servicing without first reviewing the

contract signed by the debtor or obtaining a judgment;

d) That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant in an amount to be determined at a trial by a jury;

e) That Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

f) That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

g) That Plaintiff be awarded actual damages in an amount triple that determined by a jury at trial pursuant to Haw. Rev. Stat. § 480-13;

h) That Plaintiff be awarded statutory damages of not less than $1,000.00 pursuant to Haw. Rev. Stat. § 480-13;

i) That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to Haw. Rev. Stat. § 480-13;

j) That Plaintiff be awarded damages suffered as a result of Defendants' tortious conduct.

k) That the Court declare all defenses raised by Defendants to be insufficient; and

l) Such other and further relief, including injunctive relief as may be necessary to effectuate the Court's judgment, or as the Court

otherwise deems just and equitable.

Respectfully submitted this the **___** day of <u>October</u>, 2014.

<u>s/ *Richard L. Holcomb*</u>
Richard L. Holcomb, #9177
Justin A. Brackett, #9954
Attorneys for Plaintiff